**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **CHARLIE MAYES** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 1:07cv253-MEF-TFM** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |

**UNITED STATES' RESPONSE TO § 2255 MOTION**

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and, in compliance with this Court's order, responds to Defendant/Movant Charlie Mayes' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence By a Person In Federal Custody, as follows:

## I. PROCEDURAL HISTORY AND RELEVANT FACTS

On January 6, 2005, a grand jury sitting in the Middle District of Alabama issued a one-count indictment against Charlie Mayes (Mayes). Count 1 charged that on or about August 2, 2004, in Dothan, Alabama, the defendant, having been previously convicted in a court of a crime punishable by a term of imprisonment in excess of one year, to -wit: Unlawful Distribution of a Controlled Substance in the Circuit Court of Houston County, Alabama (CC 90-232), and Possession of Marijuana in the Circuit Court of Houston County, Alabama (CC 85-86), knowingly and willfully possessed a firearm, in and affecting commerce, that is a Hi Point model CF, .380 ACP semi-automatic pistol, Serial Number P721536, and ammunition, in violation of Title 18 U.S.C. § 922(g)(1).

Mayes was arraigned before United States Magistrate Judge Charles S. Coody on February 23, 2005, entering a plea of not guilty.

On August 9 and 10, 2005, a jury trial in the case was held before the Honorable Joel F. Dubina, United States Circuit Judge for the United States Court of Appeals for the Eleventh Circuit.

On August 10, 2005, the jury found Mayes guilty of the violation of Title 18, United States Code, Section 922(g)(1), alleged in the Indictment.

On August 17, 2005, Mayes filed a pro se <u>Motion for Acquittal or in the Alternative a Motion for New Trial.</u>

On September 20, 2005, counsel for Mayes filed a <u>Motion for Acquittal or in the Alternative Motion for New Trial</u>.

On September 27, 2005, the <u>Motion for Acquittal or in the Alternative Motion for New Trial</u> was denied.

On March 1, 2006, a sentencing hearing was held, at which Mayes informed the court of his intention to seek a downward departure based on diminished capacity, pursuant to United States Sentencing Guideline § 5K2.13.  Attachment "A".

On March 7, 2006, Mayes filed a <u>Notice of Request</u> in which he stated that he would present no psychiatric testimony in support of his request for downward departure based on diminished capacity.

On March 8, 2006, the sentencing was held. The district court found that a downward departure pursuant to USSG §5K2.13 was not established nor warranted. Attachment "B".

 Mayes was sentenced to 60 months imprisonment, 3 years supervised release, and a  special assessment fee of $100 on Count 1.

On March 9, 2006, Mayes filed a timely <u>Notice of Appeal</u>.

On July 6, 2006, Mayes filed an appeal with the Eleventh Circuit Court of Appeals presenting two issues for review: whether the District Court erred in denying Mayes' motion for a judgment of acquittal; and, whether the District Court appropriately considered Mayes' mental condition in arriving at a sentence in the case.

On September 7, 2006, the United States filed its response brief to Mayes appeal.

On December 29, 2006, the Eleventh Circuit Court of Appeals issued as mandate its judgment denying Mayes' appeal and affirmed his conviction and sentence. Attachment "C".

On March 22, 2007, Mayes filed a motion for relief under 28 U.S.C. § 2255, Motion to Vacate, Set Aside or Correct Sentence. On March 23, 2007, this Court entered an order directing the United States to respond within thirty days. The government has not received Mayes' memorandum of law in support of his motion. The United States now files this response to the § 2255 motion.

## II.  CLAIMS RAISED IN THE § 2255 MOTION

As far as the United States can discern, Mayes raises the following issues in his § 2255 motion:

1.    The District Court failed to evaluate petitioner's mental condition prior to conviction and sentencing in the present case; and,

2.    The District Court erred in denying petitioner's motion for judgment of acquittal.

## III.  RESPONSE TO CLAIMS FOR RELIEF

**A.**    **Mayes Has Met The One-Year Statute Of Limitations Deadline For The Filing of Claims Under 28 U.S.C. § 2255**.

The United States notes at the outset that Mayes has filed his motion in a timely manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time to file a motion to vacate, set aside, or correct sentence under the rule.  The applicable provision in this case requires that a movant file his § 2255 motion within one year from "the date on which the judgment of conviction became final."

The judgment against Mayes was entered by the District Court on March 8, 2006.  Mayes timely filed his notice of appeal and filed his appeal on July 6, 2006. The Eleventh Circuit Court of Appeals issued its mandate on January 29, 2007.   Although not specifically addressing the application of the statute of limitations to the 10-day notice of appeal requirement, the Eleventh Circuit has held that a judgment of conviction becomes final for someone who appeals to an appellate court when the time for seeking certiorari review in the Supreme Court expires.  *See Kaufman v. United States,* 282 F.3d 1336, 1337-39 (11th Cir.2002). Likewise, a judgment of conviction becomes final for someone who does not appeal when the time for seeking that appeal expires.  Mayes had ten days from the January 29, 2007 entry of judgment by the Eleventh Circuit

Court of Appeals to seek certiorari review by the Supreme Court for the United States; his judgment of sentence, therefore, became final on February 8, 2007. Thus, under § 2255, Mayes had until February 8, 2008 to file his motion. Therefore, Mayes' filing of his § 2255 motion prior to February 8, 2008, renders it timely.

**B.**    **Mayes' Claim That The District Court Failed To Evaluate His Mental Condition Prior To Conviction And Sentencing Should Be Rejected Because It Is Barred And It Is Without Merit.**

Mayes claims that the District Court, "...failed to evaluate [his] mental condition before court and at sentencing."

The United States presumes that Mayes' argument is that the Court did not consider his "mental condition" prior to trial and sentencing. Mayes must fail on the claim that the Court did not consider his mental condition prior to trial as the issue was not presented and therefore not preserved prior to trial and his claim fails as to consideration of his "mental condition" prior to sentencing as the record clearly supports that the issue was considered by the Court at sentencing and considered by the Eleventh Circuit Court of Appeals on direct appeal. *See* Attachment "A" and "B".

**1.**    **"Mental Condition" prior to trial.**

Mayes is not entitled to relief on those claims that he did not raise at or prior to his conviction and sentencing or on appeal, but he could have.

A motion under § 2255 cannot be used as a substitute for appeal, *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998), and claims not raised at trial or on direct appeal that could have been are generally barred from review in § 2255 proceedings, *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001), *cert. denied*, 122 S.Ct. 2362 (2002). In *Mills v. United States*, 36 F.3d 1052 (11th Cir. 1994), the Eleventh Circuit succinctly summarized the law concerning procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding.... A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development.... When a defendant fails to pursue an available claim on direct appeal, it will not be

4

considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error....  Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."...

*Id*. at 1055-56 (internal citations omitted).  *See also*, *McCoy v. United States, 266 F. 3d at 1258* ("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal.").  The burden of demonstrating cause and prejudice or a miscarriage of justice is on the movant.  *See, e.g., Bousley v. United States,* 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,'...or that he is 'actually innocent[.]'").

In this case, Mayes has clearly defaulted his claim and he has not alleged any cause and prejudice, or 'actual innocence' to overcome these procedural defaults. Mayes is not entitled to relief on those claims that he did not raise at or prior to his conviction and sentencing or on appeal, but he could have.

       2.    **"Mental Condition" at sentencing**.

As to the question of Mayes claim that the District Court did not consider his "mental condition" prior to sentencing, that issue was raised on direct appeal and Mayes is therefore procedurally barred from raising it in this petition.  As the former Fifth Circuit held, a district court need not "conduct a hearing and relitigate issues that were raised by the petitioner in his direct appeal."  *Kastenbaum v. United States*, 588 F.2d 138, 139 (1979). *See* Attachments "A", "B", and "C".

**C.    Mayes' Claim That The District Court Erred in Denying His Motion for Judgment of Acquittal Should Be Rejected Because It Is Barred And It Is Without Merit.**

Mayes claims that the District Court erred in denying his Motion for Judgment of Acquittal. The United States presumes that Mayes' argument is that the evidence presented at trial was not sufficient to convict him.

Mayes' claim must fail because this issue was raised by Mayes on direct appeal and addressed by the Eleventh Circuit Court of Appeals and is therefore procedurally barred from consideration in the present motion. As the former Fifth Circuit held, a district court need not "conduct a hearing and relitigate issues that were raised by the petitioner in his direct appeal." *Kastenbaum v. United States*, 588 F.2d 138, 139 (1979). *See* "C".

Finally, the claim should be rejected because it is meritless, as the evidence at trial was clearly sufficient to allow the jury to make a finding that Mayes, a prior convicted felon, knowingly possessed the firearm on the date set out in the Indictment.

### IV. A HEARING IS NOT APPROPRIATE IN THIS MATTER

Mayes has not pleaded facts or presented sufficient evidence or argument which, if true, show that he is entitled to an evidentiary hearing, and his claims for relief should be denied without an evidentiary hearing. See Blacklidge v. Allison, 431 U.S. 63, 73-74 (1977); Tejada v. Dugger, 941 U.S. 1551, 1559 (11th Cir. 1991); United States v. Laetividal-Gonzalez, 939 F. 2d 1455, 1465 (11th Cir. 1991). Should this Court determine that Mayes has made any arguments not addressed in this response, or should the Court determine that it needs a more detailed response from Mayes and so orders, the United States would request the opportunity to further respond to those arguments.

### V. CONCLUSION

For the above reasons, Defendant/Movant Charlie Mayes has failed to demonstrate that he is entitled to any relief from this Court, and his § 2255 motion should be denied without an evidentiary hearing.

Respectfully submitted this the 13th day of April, 2007.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280    (334) 223-7135 fax
susan.redmond@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLIE MAYES                          )
                                       )
                                       )
                                       )
        vs.                            )        CASE NO. 1:07cv253-MEF-TFM
                                       )
                                       )
UNITED STATES OF AMERICA               )
                                       )
                                       )

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2007, I attempted to electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and was unable to do so. I certify that I placed a time-stamped copy of the foregoing in the filing drawer for the United States District Court for the Middle District of Alabama, and mailed copy of the same to the following non-CM/ECF participant: Charlie Mayes, #141379, Limestone Correctional Facility, 8779 Nick Davis Road, Harvest, Alabama 35749.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
susan.redmond@usdoj.gov

# United States Court of Appeals
## For the Eleventh Circuit

No. 06-11650

District Court Docket No.
05-00012-CR-D-S

> FILED
> U.S. COURT OF APPEALS
> ELEVENTH CIRCUIT
>
> Dec 29, 2006
>
> THOMAS K. KAHN
> CLERK

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

versus

CHARLIE MAYES,

      Defendant-Appellant.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

-----------------------------------------------

Appeal from the United States District Court
for the Middle District of Alabama

-----------------------------------------------

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered:      December 29, 2006
For the Court:   Thomas K. Kahn, Clerk
By:         Jackson, Jarvis

ISSUED AS MANDATE
JAN 2 9 2007
U.S. COURT OF APPEALS
ATLANTA, GA.

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

2007 JAN 30  A 11: 08
RECEIVED



GOVERNMENT'S
EXHIBIT
A
PENGAD 800-631-6989

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 29, 2006
THOMAS K. KAHN
CLERK

No. 06-11650
Non-Argument Calendar

D. C. Docket No. 05-00012-CR-D-S

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLIE MAYES,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Alabama

(December 29, 2006)

Before ANDERSON, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Charlie Mayes appeals his conviction and 60-month sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Mayes asserts the following grounds for appeal: (1) the district court erred in denying his motion for a judgment of acquittal because the evidence was not sufficient to prove that he knowingly possessed a firearm; and (2) the district court erred in denying his request for a downward departure based on his mental condition; or, in the alternative, the district court should have sentenced him at the low end of the Guidelines range. We conclude there was sufficient evidence to sustain his conviction, we do not have jurisdiction to review the denial of the downward departure, and his sentence is reasonable.

## I. DISCUSSION

A. *Sufficiency of Evidence*

Mayes contends the evidence was not sufficient to establish he knowingly possessed a firearm. He asserts there was no direct evidence that he knew the gun was in the truck, but there was direct evidence the gun belonged to his mother, who put the gun in the truck so it would not be in the house when Mayes spent the night there. He contends the only evidence connecting him to the gun was that it was found under the seat of the vehicle he was driving.

We review sufficiency-of-the-evidence challenges *de novo*, "viewing the

2

evidence in the light most favorable to the government and drawing all reasonable inferences from the evidence in favor and in support of the jury verdict." *United States v. Smith*, 231 F.3d 800, 806 (11th Cir. 2000). The jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial. *United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir. 1984). We cannot reverse a conviction for insufficiency of evidence unless we conclude that no reasonable factfinder could find proof of guilt beyond a reasonable doubt. *United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir. 1990).

"To establish a violation of § 922(g)(1), the government must prove beyond a reasonable doubt three elements: (1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce." *United States v. Deleveaux*, 205 F.3d 1292, 1296-97 (11th Cir. 2000). "Possession, in the context of § 922(g)(1), requires that the defendant knowingly possess the firearm, and may be proven either by showing that the defendant actually possessed the firearm, or by showing that he constructively possessed the firearm." *United States v. Gonzalez*, 71 F.3d 819, 834 (11th Cir. 1996) (citations omitted). "For a person to have constructive possession over a firearm, the person must have both the intent and the power to exercise dominion and control over the firearm. As such, a defendant must, in fact,

3

know of the firearm's existence in order to exercise dominion and control over it."
*Id.* (quotations and citations omitted).

Here, the only element at issue is whether Mayes knowingly possessed the firearm. The evidence showed a gun was found in a truck driven by Mayes. While inspecting the truck, Officer Spivey saw a gun in plain view, partially underneath the driver's seat. Officer Spivey had previously seen Mayes drive the same truck two or three times, and Mayes had his own set of keys to the truck. Additionally, Mayes' former parole officer, Tommy Scarborough, saw the truck at Mayes' home in 1997, and Mayes had driven the truck to Scarborough's office. Joseph Evans testified that Mayes had the truck serviced at his shop. Mayes had also received six traffic citations while driving the truck.

Although there was other evidence presented permitting the conclusion that Mayes did not normally drive the truck, did not know his mother owned the gun, and did not know that the gun had been placed in the truck before he drove it, a reasonable juror could have also determined Mayes knew the gun was in the truck that he regularly drove. The jury had the opportunity to view first-hand the individuals presenting the evidence and weigh their credibility. *See Sanchez*, 722 F.2d at 1505. Because a reasonable factfinder, based on the evidence presented at a trial, could find proof Mayes knowingly possessed the gun beyond a reasonable

4

doubt, the district court did not err in denying Mayes' motion for a judgment of acquittal. *See* 18 U.S.C. § 922(g)(1); *Jones*, 913 F.2d at 1557.

B. *Sentence*

Mayes also contends the district court failed to consider his mental condition of schizophrenia in arriving at his sentence. He asserts the district court should have granted him a downward departure, or, in the alternative, sentenced him to the low end of the Guidelines range.

If the defendant requests a downward departure from the Guidelines range, and the district court refuses to grant the departure, we have no jurisdiction to review the district court's decision "unless the district court incorrectly believed that it lacked the statutory authority to depart from the guideline range." *United States v. Norris*, 452 F.3d 1275, 1282 (11th Cir. 2006). The district court recognized it had the authority to grant Mayes a downward departure in sentencing him due to his mental illness, but decided not to do so. Thus, we cannot review that decision.

Following the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), we review sentences under the advisory Guidelines for reasonableness. *Id.* at 765. The district court must first correctly calculate the defendant's Guidelines range, then, using the 18 U.S.C. § 3553(a) sentencing

factors, the court can impose a more severe or more lenient sentence, as long as it is reasonable. *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005). To the extent Mayes argues his sentence was unreasonable because it was in the upper portion of the Guidelines range, the court correctly determined the Guidelines range and considered the § 3553(a) factors. We conclude his sentence is reasonable.

## II. CONCLUSION

Sufficient evidence supports Mayes' conviction for being a felon in possession of a firearm. We do not have jurisdiction to review the denial of a Mayes' request for a downward departure, but we conclude his sentence is reasonable.

**AFFIRMED IN PART, DISMISSED IN PART.**

1              IN THE UNITED STATES DISTRICT COURT

2             FOR THE MIDDLE DISTRICT OF ALABAMA

3                      SOUTHERN DIVISION

4

5    UNITED STATES OF AMERICA

6         vs.                    CASE NO:  1:05cr12-JFD

7    CHARLIE MAYES,

8              Defendant.

9

10

11                  * * * * * * * * * *

12          HEARING ON MOTION TO CONTINUE SENTENCING

13                  * * * * * * * * * *

14          BEFORE THE HONORABLE JOEL F. DUBINA, UNITED STATES

15   CIRCUIT JUDGE, at Montgomery, Alabama, on Wednesday, March 1,

16   2006, commencing at 9:58 a.m.

17   APPEARANCES:

18
     FOR THE GOVERNMENT:        Ms. Susan R. Redmond
19                              Assistant United States Attorney
                                OFFICE OF THE UNITED STATES ATTORNEY
20                              One Court Square, Suite 201
                                Montgomery, Alabama  36104
21
     FOR THE DEFENDANT:         Mr. Kevin L. Butler, Attorney at Law
22                              FEDERAL DEFENDERS
                                MIDDLE DISTRICT OF ALABAMA
23                              201 Monroe Street, Suite 407
                                Montgomery, Alabama  36104
24
25              Proceedings reported stenographically;
                transcript produced by computer.

GOVERNMENT'S
EXHIBIT

B

PENGAD 800-531-6989

```
 1        (The following proceedings were heard before the Honorable

 2         Joel F. Dubina, United States Circuit Judge, at Montgomery,

 3         Alabama, on Wednesday, March 1, 2006, commencing at

 4         9:58 a.m.:)

 5        (Call to Order of the Court)

 6             THE COURT:  Call now for sentencing the case of United

 7   States of America versus Charlie Mayes.  Is the government ready

 8   to proceed?

 9             MS. REDMOND:  Yes, Your Honor.

10             THE COURT:  Is the defendant ready to proceed?

11             MR. BUTLER:  Your Honor, no.  Your Honor, as Your Honor

12   is aware, we've been -- I've been attempting to get some

13   documents showing Mr. Mayes' mental health status from various

14   government agencies.  To this day, I have never received a

15   document.  Through the assistance of Mr. Mayes and his mother,

16   we were able to get the documents from -- showing he has mental

17   health problems through his doctor, who is located in Dothan,

18   Alabama.

19             Last week, Monday, I believe, I submitted to the Court

20   a subpoena asking for the doctor to be present.  On or about

21   Wednesday, the subpoena was executed by this Court.  For

22   whatever reason, that subpoena made its way to myself and my

23   assistant on Thursday.  It was executed by the Court, I believe,

24   and put in our box for pickup that day.  My investigator on this

25   case, Mr. Carmichael, was involved -- there was a large trial
```

1  term last week.  He was involved in that, could not get the

2  subpoena out until Monday, which we did.  Yesterday --

3        THE COURT:  I don't like the excuse that I'm too busy.

4        MR. BUTLER:  I understand.

5        THE COURT:  We're all busy.

6        MR. BUTLER:  Yes, Your Honor.  Yesterday we received a

7  phone call from the doctor indicating that as a result of when

8  he got the subpoena, he could not be here today for -- to

9  testify.  I believe his testimony is relevant for one key

10  issue.  I think there is information showing that Mr. Mayes has

11  a mental health problem, mental health issues, but that's only

12  one element under 5K2.13, diminished capacity.  We have to show,

13  Your Honor, that that mental health problem, his paranoid

14  schizophrenia, contributed substantially to the commission of

15  the offense for your -- for the Court to consider whether to

16  give it.  There have been two outs, for lack of a better word,

17  the Court may deem appropriate and, therefore, the departure

18  isn't warranted, even though it may have substantially

19  contributed.  Nevertheless, Doctor -- I'm not qualified to give

20  that testimony.  Dr. Hernandez is not here today.

21        With the Court's permission -- and I am not trying to

22  delay this any longer than is necessary.  I would ask the

23  Court's permission for a week to a week-and-a-half continuance

24  so as to work with Dr. Hernandez's schedule.  I know it's not

25  the Court's job to work around a doctor's schedule, but he is --

1  he does appear to be very busy.

2       THE COURT:  I think you have one problem there.  If I

3  permit this doctor to testify, as I understand the law, the

4  government also has the opportunity to have this defendant

5  examined independently.  And the way they used to do it -- it's

6  been a long time since I had one of these, but the way they used

7  to do it is send them off to Springfield, Illinois, I think it

8  is, where there's a federal institution and a federal hospital

9  where all federal inmates who have any kind of psychiatric

10 problem are evaluated.  So if I grant your continuance and let

11 you do this, then your client is going to end up going to

12 Springfield maybe for three or four months.  Do you understand

13 that?

14      MR. BUTLER:  Your Honor, that has been discussed with

15 Mr. Mayes.  In light of the fact that right now the guideline

16 range being recommended is 51 to 60 months, in order to get this

17 matter adequately ruled upon and addressed by all parties,

18 that -- that continuance would be acceptable to the parties.

19      And again, I want to underscore and apologize to the

20 Court.  It is not my intention to make excuses.  You are

21 correct.  We are all busy.  That is not an excuse.  Dealing --

22 dealing with individuals sometimes is not as straightforward and

23 easy as I thought.  I think your courtroom deputy had to deal

24 with some hostile people yesterday; I did as well.  I believe I

25 helped create that situation.  But we're doing what we can to

1    get these people here so that Your Honor can consider all

2    relevant testimony.

3         THE COURT:  Well, let me hear from the government.

4    What's the government's position on the -- as I understand it,

5    this is a motion to continue.  What's the government's

6    position?

7         MS. REDMOND:  Judge, I think --

8         THE COURT:  You do understand you have the right to

9    have him independently evaluated.

10        MS. REDMOND:  Oh, yes, sir.  And we would be requesting

11   that.  So that the Court knows, let me put this, as I understand

12   it, in its procedural formation.  We were not made aware -- we

13   received the presentence report from the probation services.  We

14   had no objections to the report.  We were aware that the defense

15   had no objections to the report, so a conference was obviously

16   not held.

17        I first became aware of the diminished capacity

18   argument, quite honestly, yesterday, when Mr. Butler shared with

19   me that he would be faxing to me some medical documentation.

20   And I received it yesterday.  I don't know who this

21   Dr. Hernandez is.  The paperwork I have indicates a Dr. Lopez.

22   So I'm even more confused.

23        MR. BUTLER:  I think I was saying the wrong name.

24   That's my fault.

25        MS. REDMOND:  Okay.  We were prepared to go forward

1   this morning if this was the only information, obviously, that

2   was going to be offered by the defense, because we do not

3   believe that the second prong -- we don't really think the first

4   prong would be established.  We definitely believe that the

5   second prong will not be established under 5K2.13.  If, however,

6   there is a doctor who is willing to testify that in any way,

7   shape, or form his alleged diminished capacity contributed

8   substantially to the commission of this offense, being a felon

9   in possession, then the government would be invoking its right

10  and would ask to have the defendant sent off for an evaluation.

11        THE COURT:  Well, let me ask Mr. Butler.  Is this

12  doctor prepared to say that?

13        MR. BUTLER:  Your Honor --

14        THE COURT:  That is, to testify to the second prong?

15  Because this is a very difficult guideline --

16        MR. BUTLER:  Yes.

17        THE COURT:  -- for you to jump over the hoops.

18        MR. BUTLER:  Yes.  Yes, Your Honor.

19        THE COURT:  And it just seems to me that it's not the

20  first part of it that's so tough.  It's the second part.

21        MR. BUTLER:  Yes, Your Honor.  I agree --

22        THE COURT:  That it substantially contributed.

23  Substantially means a lot.

24        MR. BUTLER:  It does, Your Honor.  And I simply do not

25  have that answer.  By the end of this week, assuming that

1   Dr. Hernandez would return my phone calls -- I thought that he

2   was mad at me yesterday.  I will be making phone calls to him

3   today, tomorrow, and driving down there tomorrow to speak with

4   him to get these answers, assuming he'll speak with me.  I don't

5   know what his testimony would be.  If I meet with him and he

6   says, nope, I don't think so, I will inform the government of

7   that immediately and let your -- the Court know as well.  And

8   I'll -- I'm not saying I concede the issue, but I recognize that

9   I would have a very, very big hurdle at that point.  But I just

10  don't know what he's going to say.

11          THE COURT:  Well, I'll tell you what Mr. -- because if

12  he can't say that, it seems to me Mr. Mayes is not entitled to a

13  downward departure based on that guideline.  I'm going to give

14  you until next Thursday.

15          MR. BUTLER:  Yes, Your Honor.  I'll have that

16  information.

17          THE COURT:  Let us know.  If he's not going to say

18  that, you need to let us know if you're going to continue to

19  insist on this downward departure.  If he is going to say that

20  he thinks it did substantially contribute to the commission of

21  the offense -- that is, his schizophrenia or whatever he suffers

22  from -- then this case needs to be continued generally, because

23  the United States would then want him sent to Springfield for

24  evaluation.  And I don't have any idea.  It used to take three

25  or four months.  What does it take now?

1          MS. REDMOND:  That's about right.

2          MR. BUTLER:  The same time, Your Honor.  And again,

3    Your Honor, I apologize to all the parties and the Court here.

4    That is not our intention here to delay this matter any longer

5    than necessary.  We'll get that answer immediately.

6          THE COURT:  Mr. Mayes, you've heard everything that

7    we've talked about today.  Do you have -- are you in agreement

8    with what your counsel wants to do, and are you in agreement

9    that we continue this case until next Thursday?  And in the

10   event this doctor says that whatever your mental difficulties

11   are did not contribute to the commission of this offense --

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  -- then we're going to go ahead and

14   sentence that day.  Otherwise, if he says your mental condition

15   did contribute substantially to the commission of this offense,

16   then you're going to have to go off to Springfield, Illinois,

17   for three or four months.  Do you understand that?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Do you have any problem with that?

20         THE DEFENDANT:  Well, I don't want to go off.  I want

21   to go ahead and get it over with.

22         THE COURT:  Well, you're going to have to go off

23   because your lawyer's made this motion.  Do you understand that?

24         THE DEFENDANT:  Yes.  Yes.  I have to go ahead on with

25   it.

9

1          THE COURT:  You're in custody now anyway, aren't you?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  How much longer does he have left on his

4   state sentence?

5          MR. BUTLER:  Your Honor, November, I believe, of this

6   year is currently his EOS date.

7          Is that correct?

8          THE DEFENDANT:  I'll be placed back on parole.

9          MR. BUTLER:  Yes, sir.  Yes, Your Honor.

10         THE COURT:  In November.

11         MR. BUTLER:  Yes, Your Honor.

12         THE COURT:  So he'll be in custody until November?

13         MR. BUTLER:  The state, yes.  But he will remain in

14  custody on this case --

15         THE COURT:  No, no, no.  His state custody, though, is

16  good through November.

17         MR. BUTLER:  Yes, sir.

18         THE COURT:  We can get him back from Springfield before

19  then --

20         MR. BUTLER:  Absolutely, Your Honor.

21         THE COURT:  -- if we have to.

22         MS. REDMOND:  Judge, if I may, as a scheduling matter,

23  I am scheduled on the 9th, which is next Thursday, to be in

24  Macon on a pretrial motion over there.  And if this Court is

25  going to take up sentencing -- let me --

1    (Off-the-record discussion)

2        THE COURT:  Let's do it Wednesday.

3        MS. REDMOND:  Thank you, Judge.

4        MR. BUTLER:  Yes, Your Honor.  Your Honor --

5        THE COURT:  I'm not going to continue this again --

6        MR. BUTLER:  I understand, Your Honor.

7        THE COURT:  -- unless the doctor -- you understand,

8    now, so we're on the same page, unless the doctor, your doctor,

9    is willing to testify under oath that the second prong is met.

10        MR. BUTLER:  Understood, Your Honor.

11        THE COURT:  If he doesn't say that, we're going to have

12    a sentencing hearing; and we're going to sentence your client

13    next Wednesday.

14        MR. BUTLER:  Yes, Your Honor.

15        THE COURT:  If he is going to testify under oath -- and

16    I accept your representation on that as an officer of the

17    Court -- that it did substantially contribute, then I want this

18    defendant sent to Springfield as soon as the marshals can get

19    him out there.

20        MR. BUTLER:  Yes, Your Honor.  Your Honor, I don't know

21    if -- I think it's just going to be up to me attempting to

22    persuade the doctor.  I will inform your courtroom deputy at all

23    if I'm having any difficulties setting up an appointment with

24    the doctor.  I'm going to try to drive down there today and see

25    if I can get this answered so we can --

1      THE COURT:  You need to set an appointment up before
2  you drive down there.
3      MR. BUTLER:  I mean after, of course, I contact him.
4  But I'm going to try to do that today.  But I will inform your
5  courtroom deputy if I'm having any difficulties in that area
6  immediately.
7      THE COURT:  Well, if you need any kind of court order,
8  just let me know.
9      MR. BUTLER:  Yes, Your Honor.
10      THE COURT:  We can get the doctor's attention.
11      MR. BUTLER:  Yes, Your Honor.  Thank you.
12      THE COURT:  Court will be in recess until further
13  order.
14      (Proceedings concluded at 10:10 a.m.)
15                * * * * * * * * * * *
16             COURT REPORTER'S CERTIFICATE
17      I certify that the foregoing is a correct transcript
18  from the record of proceedings in the above-entitled matter.
19         This 2nd day of August, 2006.
20
21                              /s/ Risa L. Entrekin
                                 Registered Diplomate Reporter
22                              Certified Realtime Reporter
                                 Official Court Reporter
23
24
25



```
 1              IN THE UNITED STATES DISTRICT COURT
                               FOR
 2              THE MIDDLE DISTRICT OF ALABAMA

 3

 4

 5  THE UNITED STATES
        OF AMERICA
 6
            vs.                        CRIMINAL ACTION NO.
 7                                     1:05-CR-12-JFD
    CHARLIE MAYES
 8

 9

10

11

12

13

14

15

16                  SENTENCING PROCEEDINGS

17

18

19              *   *   *   *   *   *   *   *   *

20

21
    BEFORE:          The Hon. Joel F. Dubina
22
    HEARD AT:        Montgomery, Alabama
23
    HEARD ON:        March 8, 2006
24
    APPEARANCES:     Susan Redmond, Esq.
25                   Kevin L. Butler, Esq.
```

GOVERNMENT'S
EXHIBIT

C

PENGAD 800-531-6989

1   WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE
    THE HON. MYRON H. THOMPSON ON MARCH 8, 2006 AT THE
2   UNITED STATES COURTHOUSE IN MONTGOMERY, ALABAMA:

3

4           THE COURT:  Calling now for sentencing the

5   case of *United States of America vs. Charlie Mayes,* case

6   number 1:05-criminal-12-JFD.

7           Mr. Mayes, today the Court will determine a

8   reasonable sentence in your case by considering the

9   United States Sentencing Guidelines, which were

10  promulgated pursuant to the Sentencing Reform Act of

11  1984 and which are now advisory.  And by considering the

12  factors set forth in 18 U. S. C., Section 3553(a).

13          Have you and your attorney reviewed the

14  presentence report?  Have you reviewed that report?

15          THE DEFENDANT:  Yes.

16          MR. BUTLER:  Yes, Your Honor.

17          THE COURT:  Do you have any objections to any

18  of the contents of the presentence report?

19          MR. BUTLER:  Your Honor, I have reviewed the

20  report and I have filed an objection under United States

21  Sentencing Guidelines code 5K2.1(3).  In order to

22  support my objection, it is my opinion that I need to

23  show two things.  One, that Mr. Mayes has significantly

24  reduced mental capacity; two, that if the Court makes a

25  finding that there is a significantly reduced mental

```
 1   capacity, that it substantially affected his commission

 2   of this offense.

 3        I believe I have presented the Court with

 4   information sufficient to make at least the preliminary

 5   showing; that being, that he does have a significantly

 6   reduced mental capacity.  Specifically, that he's a

 7   paranoid schizophrenic.  The information was provided by

 8   United States probation officer.  In the event it's not

 9   made its way to the Court, this information is from

10   Dr. Fernando Lopez, and I'll mark it as Defendant's

11   Exhibit one in which Dr. Lopez has diagnosed Mr. Mayes

12   with schizophrenic disorder; specifically, that he's a

13   paranoid schizophrenic; that he hears voices -- and that

14   he hears voices.

15        My conversations with Mr. Mayes -- during

16   conversations with Mr. Mayes, Mr. Mayes has informed me

17   as well that he does hear voices.  But that brings us to

18   the next issue, Your Honor:  whether or not the

19   schizo-affective disorder as diagnosed by Dr. Fernando

20   Lopez substantially contributed to Mr. Mayes' commission

21   of this offense.  I have met with Dr. Fernando Lopez,

22   and at this time I have nothing further to present to

23   the Court other than what is contained within his

24   reports.

25        THE COURT:  Well I've read his report, and
```

1    even if I agree with you that you meet the first prong

2    of Section 5K2.1(3), I don't see anything in the report

3    by Dr. Lopez where he says that the significantly

4    reduced mental capacity contributed substantially to the

5    commission of the offense.  Have I missed something?

6              MR. BUTLER:  You have not, Your Honor.

7              Your Honor, I have relayed this information to

8    Mr. Mayes, as well as other information that I have

9    gathered in connection with this case, and informed him

10   that in my professional opinion the information the

11   Court has is all the Court will receive as to this

12   issue.  Mr. Mayes wishes for Dr. Fernando Lopez to be

13   present.  I have informed Mr. Mayes that I've spoken

14   with him -- that I actually subpoenaed him and told him

15   he did not have to come.  Utilizing my professional

16   judgment, I did not think it was in his best interest,

17   that is Mr. Mayes, to have Dr. Fernando Lopez testify

18   today.  Mr. Mayes believes that Dr. Lopez's testimony,

19   however, will be of assistance.

20             Am I correct?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Well let me ask you this.  If we

23   made him appear live, would Dr. Lopez say anything in

24   addition to what is contained in this report?

25             MR. BUTLER:  Of benefit to Mr. Mayes?

```
 1              THE COURT:  Yes.

 2              MR. BUTLER:  No.  It is my opinion that he

 3   would not.

 4              THE COURT:  Okay.

 5              MR. BUTLER:  I believe -- well, I guess that's

 6   where we are.  With Mr. Mayes believing that

 7   Dr. Fernando Lopez should be present I, as his

 8   representative, stating after having met with him or in

 9   my meeting with him that it is not in his best interests

10   for him to be here.

11              THE COURT:  I accept your representation,

12   Counsel.

13              What says the Government to this?

14              MS. REDMOND:  Judge, I'm not sure the

15   Government has much to say about this.  We certainly

16   have not had access to Dr. Lopez.  We've not had access

17   to any psychiatric records other than those provided by

18   Defense and I believe provided to the Court.

19              If I understand the Court correctly, then the

20   Government is ready to proceed this afternoon.

21              MR. BUTLER:  Final point as to this, Your

22   Honor, being in the event the Court proceeds forward, we

23   are not withdrawing our objection.  We're just asking

24   the Court to make a ruling on -- I mean our request

25   under 5K2.1(3), we're simply asking the Court make a
```

1    ruling as to that.

2         THE COURT:  All right.  Well first I'm going

3    to admit Dr. Lopez's report into the record.  And I will

4    say this.  I have carefully read that report.

5         And as I stated on the record just a moment

6    ago, as I understand what it takes to get a 5K2.1(3)

7    diminished capacity downward departure, it's one of two

8    things take place.  Number one, the defendant committed

9    the offense while suffering from a significantly reduced

10   mental capacity.  I'm not sure I'm -- I can even say

11   that, based on what I remember from the evidence

12   presented at the trial here.  But even assuming if I

13   give you that, there is nothing contained in Dr. Lopez's

14   report that indicates that significantly reduced mental

15   capacity contributed substantially to the commission of

16   the offense.

17        As I read this guideline, it reads in the

18   conjunctive.  In other words, you've got to show both

19   things.

20        MR. BUTLER:  You're correct.

21        THE COURT:  You clearly don't show the second

22   one, so I'm going to deny the diminished capacity

23   downward departure on that basis.

24        MR. BUTLER:  Yes, Your Honor.

25        Your Honor, I had no other objections to the

```
 1   report.  I just have a statement before sentencing.  Mr.

 2   Mayes may, as well.

 3          THE COURT:  Okay.  Well I'll let do you that

 4   in just a minute.  Let me go ahead and say a few other

 5   things on the record.

 6          There being no objections to the presentence

 7   report, other than the request for diminished capacity

 8   downward departure, which I have denied, the Court finds

 9   that the offense level is twenty, the criminal history

10   category is four, the guideline range is from fifty-one

11   months to sixty-three months, the supervised release

12   period is from two years to three years, and the fine

13   range is from seventy-five hundred dollars to

14   seventy-five thousand dollars.

15          Do you have anything to say in mitigation, or

16   otherwise, before the Court pronounces sentence in this

17   case, Mr. Mayes?

18          THE DEFENDANT:  Yeah.  I have my mercy on the

19   Court to lower my sentence, if there is any way

20   possible.

21          THE COURT:  All right.  Anything you want to

22   say on his behalf?

23          MR. BUTLER:  Yes, Your Honor.  Though the

24   report -- Though the Court has made a finding that a

25   5K2.1(3) departure is not appropriate in this case, I
```

1    think the report is support for our position that a

2    sentence outside of the guideline range is appropriate.

3    As Your Honor mentioned earlier, the guidelines are

4    advisory.  What we have here is an individual -- well,

5    are advisory, and that the Court is to impose a sentence

6    that is reasonable pursuant to the guidelines that are

7    outlined in Section 3553.

8         What 3553 indicates is the Court is to take

9    into consideration the nature of the crime, the facts

10   and circumstances of the case, as well as the history

11   characteristics of the individual.

12        Mr. Mayes is a person who has limitations.  He

13   is an individual who -- I do not believe there is an

14   issue regarding competence.  I believe he understands

15   what's happening today, as well as what has taken place.

16   But he's an individual with limitations, in my opinion,

17   intellectually as well as the limitations that are

18   outlined in the report.  I believe on page two of the

19   report it indicates Mr. Mayes is a quiet man who keeps

20   to himself.  That's true.  Though he's communicated with

21   me, Mr. Mayes is a very reserved person, a man of few

22   words, a man who has put himself in a situation where

23   he's now being judged by this Court.

24        He did not complete -- I mean he completed

25   grade school, never attended high school, has very

1  limited education and has essentially struggled to

2  support himself throughout his entire life.  These have

3  not historically been factors that have been allowed to

4  be considered by the Court in imposing a sentence under

5  the guidelines, but the guidelines are advisory now and

6  what I believe is imperative and critical, is that the

7  sentence imposed be adequate to punish and deter, but

8  take into consideration the history and circumstances of

9  the person.

10          Given that, what we would ask Your Honor to do

11  is to consider imposing a sentence of approximately

12  forty-eight months.  Mr. Mayes is probably ready to hit

13  me.  He wants a sentence much lower than that, but I

14  think a sentence lower than that would not be one that

15  would be reasonable, given the recommended guideline

16  range.  We believe a sentence of forty-eight months in

17  this circumstance would be appropriate.  It would

18  adequately punish Mr. Mayes.  It would adequately deter

19  any further conduct, and would not be greater than

20  necessary.

21          Additionally, Your Honor, a sentence of

22  forty-eight months is only three months lower than the

23  fifty-one months, which is the bottom end of the

24  applicable guideline range.  It is our position,

25  therefore, Your Honor, that a sentence of forty-eight

 1  months, given his background and history, is appropriate

 2  in this case.

 3          THE COURT:  Okay.  Anything else?

 4          MR. BUTLER:  No, Your Honor.

 5          THE COURT:  All right.  I'm now going to state

 6  the sentence, Mr. Mayes, but you will have a final

 7  opportunity to make any legal objections before the

 8  sentence is imposed.

 9          Based upon the advisory guideline range and

10  the applicable statutory factors, it is the judgment of

11  this Court that you are hereby committed to the custody

12  of the Federal Bureau of Prisons to be imprisoned for a

13  term of sixty months.  This sentence shall be served

14  consecutively to the sentence you are now serving.

15          You shall pay to the United States District

16  Court Clerk a special assessment fee of one hundred

17  dollars.  The special assessment fee is due immediately.

18  Based on your inability to pay, the Court waives the

19  imposition of a fine.  The Court finds that there is no

20  identifiable victim who incurred a financial loss as a

21  result of this offense.

22          The Court recommends that you be designated to

23  a facility where intensive residential substance abuse

24  treatment is available.

25          Upon release from imprisonment you shall be

1  placed on supervised release for a term of three years.

2  Within seventy-two hours of release from custody you

3  shall report to the probation office in the district to

4  which you are released.  While on supervised release you

5  shall comply with the mandatory and standard conditions

6  of supervised release on file with this Court.

7      The Court also orders the following special

8  conditions.  You shall cooperate in the collection of

9  D N A as directed by the probation officer.  You shall

10 participate in drug testing and treatment.  You shall

11 contribute to the cost of any treatment based on ability

12 to pay and the availability of third party payments.

13 You shall participate in mental health treatment.  You

14 shall contribute to the cost of any treatment based on

15 ability to pay and the availability of third party

16 payments.

17     You shall submit to a search of your person,

18 residence, office or vehicle pursuant to the search

19 policy of this Court.

20     The Court has considered each of the factors

21 listed in 18 U. S. C., Section 3553, and based on that

22 consideration finds that the sentence that has been

23 stated is reasonable.  Specifically, I want to say that

24 the Court finds that the first element under 3553, the

25 first factor is met.  That is reflect the seriousness of

1  the offense, promote respect for the fort law and

2  provide just punishment for the offense.

3      I also find that the second factor of the

4  statute is met.  Provide adequate deterrents to criminal

5  conduct.  And I find that the fourth factor of the

6  statute is met, provide the defendant with needed

7  correctional treatment.  The Court further finds that

8  any lesser sentence would be insufficient to accomplish

9  the purposes set forth in 18 U. S. C., Section

10 3553(a)(2).

11      Now at this time I'm going to ask you, Mr.

12 Mayes, are there any objections to the sentence or to

13 the manner in which the Court pronounced it?

14      MR. BUTLER:  Your Honor, before he answers,

15 what I would ask the Court to consider is recommending

16 that Mr. Mayes be, in addition to a facility that

17 provides drug treatment, that he be afforded the

18 opportunity to serve his time in a facility that

19 addresses mental health problems.

20      THE COURT:  I think I said that, but if I

21 didn't we will include that.

22      MR. BUTLER:  Thank you, Your Honor.  I must

23 not have heard it.

24      The second thing, Your Honor, I would ask the

25 Court to consider is Mr. Mayes I believe has

```
 1   approximately seven more months to serve on his state

 2   sentence.  That this sentence be allowed to run

 3   concurrent with that state sentence in light of the fact

 4   that he's essentially served it and he will have to

 5   serve at least five years pursuant to your sentencing

 6   order.

 7              THE COURT:  What says the Government to that?

 8              MS. REDMOND:  Judge, I think the Court

 9   properly took into consideration in rendering its

10   judgment in this case whether or not the cases should

11   run concurrently.  I think I heard the Court say

12   "consecutive," and the Government would agree with the

13   Court's position in the case.

14              THE COURT:  I'm going to let it run

15   consecutive.

16              MR. BUTLER:  Yes, Your Honor.  Nothing

17   further, Your Honor.

18              THE COURT:  All right.  You both know that if

19   you fail to state any objections at this point you run

20   the risk of being unable to raise such objections on

21   appeal?  Have you raised all the objections you wish to

22   raise?

23              MR. BUTLER:  Yes, Your Honor.

24              THE COURT:  The sentence is ordered imposed as

25   stated.
```

1          The Court will now address your right to

2    appeal, Mr. Mayes, I want to tell you that you have the

3    right to appeal.  In order for your appeal to be timely,

4    you may need to file a notice of appeal as soon as ten

5    days from the entry of judgment.  If you cannot afford

6    the cost of an appeal you have the right to apply for

7    leave to appeal in forma pauperis.

8          Do you have any questions regarding your right

9    to appeal?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Do you understand you have the

12    right to appeal?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  You don't understand that you have

15    the right to appeal?

16          THE DEFENDANT:  Not really.

17          THE COURT:  Well, let me just say this to you.

18    Have you told him about his right to appeal?

19          MR. BUTLER:  Yes, Your Honor.

20          THE DEFENDANT:  All I know is appeal.

21          THE COURT:  You have a lawyer standing right

22    there that's with the Federal Defender, and if you make

23    a request of him, he can file a notice of appeal for

24    you.

25          MR. BUTLER:  He has informed me, and a notice

1   of appeal will be filed, Your Honor.

2        THE COURT:  All right.  Do you have any other

3   questions regarding your right to appeal?

4        THE DEFENDANT:  No, sir.

5        THE COURT:  All right.  You're remanded to the

6   custody of the United States Marshal.

7        MR. BUTLER:  Thank you, Your Honor.

8        THE COURT:  Court will be in recess until

9   further order.

10       (Whereupon, the proceedings were concluded.)

11            *  *  *  *  *  *  *  *  *

12              **COURT REPORTER'S CERTIFICATE**

13       I certify that the foregoing is a correct

14   transcript from the record of proceedings in the

15   above-entitled matter as prepared by me to the best of

16   my ability.

17       I further certify that I am not related to any

18   of the parties hereto, nor their counsel, and I have no

19   interest in the outcome of said cause.

20       Dated this 3rd day of August 2006.

21

22            /s/  Mitchell P. Reisner
             **MITCHELL  P.  REISNER,  CM, CRR,**
23            Official US Dist. Court Reporter
             Registered Professional Reporter
24            Certified  Real-Time  Reporter

25